**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

JOHNNY HARRIS,

                               CASE NO. 2:17-cv-11610

         *Plaintiff*,              DISTRICT JUDGE MATTHEW F. LEITMAN
*v.*                          MAGISTRATE JUDGE PATRICIA T. MORRIS

COMMISSIONER OF SOCIAL SECURITY,

         *Defendant.*

_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON CROSS**
**MOTIONS FOR SUMMARY JUDGMENT (Docs. 11, 13)**

## I.      RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment, (Doc. 11), be **DENIED**, that the Commissioner's Motion, (Doc. 13), be **GRANTED**, and that this case be **AFFIRMED**.

## II.      REPORT

### A.      Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to the undersigned Magistrate Judge for the purpose of reviewing a final decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff Johnny Harris's ("Plaintiff") claim for Disability Insurance Benefits

("DIB"). (Doc. 2). The matter is currently before the Court on cross-motions for summary judgment. (Docs. 11, 13).

On May 22, 2015, Plaintiff filed the instant application for DIB, alleging a disability onset date of January 14, 2009, later amended to July 18, 2009. (Tr. 203-11). The Commissioner denied his claim. (Tr. 65-78). Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), and an initial hearing was held on March 25, 2016 before ALJ B. Lloyd Blair, followed up by a longer hearing on October 17, 2016 before the same ALJ. (Tr. 30-59). The ALJ issued a decision on January 10, 2017, finding Plaintiff not disabled. (Tr. 12-29). On March 30, 2017, the Appeals Council denied review, (Tr. 1-5), and Plaintiff filed for judicial review of that final decision on May 19, 2017. (Doc. 1).

### B.     Standard of Review

The district court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). The district court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x. 502, 506 (6th Cir. 2014) (internal quotation marks omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id.* at 286 (internal citations omitted).

### C.      Framework for Disability Determinations

Under the Act, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI). The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically

determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC [residual

functional capacity] and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

Under the authority of the Social Security Act, the SSA has promulgated regulations that provide for the payment of disabled child's insurance benefits if the claimant is at least eighteen years old and has a disability that began before age twenty-two (20 C.F.R. 404.350(a) (5) (2013). A claimant must establish a medically determinable physical or mental impairment (expected to last at least twelve months or result in death) that rendered her unable to engage in substantial gainful activity. 42 U.S.C. § 423(d)(1)(A). The regulations provide a five-step sequential evaluation for evaluating disability claims. 20 C.F.R. § 404.1520.

### D.    ALJ Findings

Following the five-step sequential analysis, the ALJ found Plaintiff not disabled under the Act. (Tr. 12-29). At Step One, the ALJ found that Plaintiff last met the insured-status requirements of the Act on December 31, 2014, and had not engaged in substantial gainful activity since July 18, 2009, his amended alleged onset date. (Tr. 17). At Step Two, the ALJ concluded that the following impairments qualified as severe: obesity, obstructive sleep apnea, hypertension, exercise-induced asthma, and status post L4-5 fusion. (Tr. 17-20). The ALJ also decided, however, that none of these met or medically equaled a listed impairment at Step Three. (Tr. 20). Thereafter, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work, except

> the claimant could not crawl, or use ladders, ropes, or scaffolds. He could only occasionally stoop, kneel, crouch, and use ramps or stairs, the claimant should have avoided even moderate exposure to fumes, odors, gases, and

5

respiratory irritants. He must have avoided concentrated exposure to hazards including dangerous and unprotected machinery or heights. The claimant could only occasionally bend, twist, or turn at the waist. He must have been able to use a cane to ambulate.

(*Id.*). At Step Four, the ALJ found Plaintiff capable of performing his past relevant work. (Tr. 24). Proceeding to Step Five, the ALJ also found Plaintiff capable of performing a substantial number of jobs in the national economy, and therefore not disabled under the Act. (Tr. 24-25).

### E.    Administrative Record

#### 1.    Medical Evidence

The Court has reviewed Plaintiff's medical records. In lieu of summarizing his medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

#### 2.    Administrative Hearing

##### i.    Function Report

Plaintiff filled out two Function Reports, dated June 9, 2015 and August 21, 2015, respectively. In the first he noted that "[m]y daily life is difficult to manage. I do not enjoy the things that used to make me happy. I find me isolating myself from family and friends. I have no interest in many of the activities I used to do. I do not sleep more than 4 hours a night, making it hard to have and maintain [an] occupation." (Tr. 245). He struggled with "attention, concentration, and problem solving," but identified no particular issues with personal care. (Tr. 246). He lived in a homeless shelter at the time, and meals were provided. (Tr. 247). He continued to do laundry, but avoided yard work

6

due to his back injury and depression. (Tr. 247-48). He went outside once a day with "VA bus pick-up," and he shopped in stores for snacks "once a week" for approximately 30 minutes. (Tr. 248). He remained able to handle finances, and he enjoyed "[r]unning, basketball, and handball," though "I do not do these things anymore." (Tr. 248-49). He talked on the phone for up to 2 hours a day, and attended church services on a regular basis. (Tr. 249). Prompted to indicate activities with which he struggled, Plaintiff marked: lifting, squatting, bending, standing, walking, sitting, kneeling, memory, concentration, following instructions, and getting along with others. (Tr. 250). He could walk "about a block" before needing to rest for "30 min[utes] to [an] hour." (*Id.*). He could pay attention for "30 seconds to 2 min[utes]." (*Id.*). He did not follow instructions well, and he did not trust authority figures. (Tr. 250-51). He had used a cane and glasses "[a]ll the time to function" since "2008 or 2009." (Tr. 251).

In his August Function Report, he elaborated a little more on his troubles. He noted at the outset that "[t]he physical pain in my lower back has increase[d] over the years, making it difficult for me to work. I can't concentrate on what I'm doing. I only focus on the pain." (Tr. 268). After waking up, he spent "hours" in bed until "the pain subside[d]," which in turn caused stiffness and slow movement for "the rest of the day." (Tr. 269). Certain personal care activities, such as dressing, bathing, and using the toilet, were more difficult for him because he had trouble bending and sitting. (*Id.*). In discussing hobbies, he indicated that "[b]ecause of the injury playing horseshoes, basketball, and long walks are painful." (Tr. 272). He also marked expanded the list of abilities affected by his condition, including: lifting, squatting, bending, standing,

7

reaching, walking, sitting, memory, completing tasks, concentration, understanding, following instructions, and getting along with others. (Tr. 273). He could only pay attention "[m]oment to moment." (*Id.*). He also wrote "I have been 100% permanent and total disable [sic] through Veterans Affairs for several years." (Tr. 275).

### ii.    Plaintiff's Testimony at the Administrative Hearings

Plaintiff's March 2016 hearing was brief, as it was adjourned at the outset in order to allow Plaintiff time to get a representative. *See generally* (Tr. 53-59). At the October 2016 hearing, Plaintiff opened his testimony by noting that he previously worked as a "logistics analyst for Calibre, as a defensive contractor," and before that "at SAAIC as a defensive contractor" for "seven months, eight months' timeframe." (Tr. 35). Prior to this work, he served in the military "from 1983 to 2006," and he was incarcerated from November 2009 until July 2014. (*Id.*). In 2006, he was "given an award of 100% disability from the VA." (*Id.*). The ALJ then asked why he believed he could not work, to which he responded: "I had back surgery at the L4-L5. I'm not able to sit for any length of time, or stand for any length of time. And the pain come in a times that I don't expect it. And then sometimes there's a numbness. I also have sleep apnea. I was issued a C-PAP machine through the VA, because . . . I can't get that much sleep. I had surgery on my nasal passages to try and assist with that." (Tr. 36). His back pain would ebb and flow, and it "moves from the middle of my back" down to "the top of my right buttocks, down the back of my leg, to my heel." (Tr. 37). He ranked his pain at a 6 out of 10 at that particular moment. (*Id.*). To ease his pain, he took "a muscle relaxer," which caused "[a] little nausea" and "a little grogginess." (*Id.*).

8

Plaintiff then summarized a number of additional impairments that plagued him, including "[e]xercise induced" asthma and attention-deficit disorder. (Tr. 38-39). In 2007 his doctor prescribed a cane, and he had used it ever since. (Tr. 41). On occasion, he visited with "a friend of mine," and he regularly attended church. (*Id.*). He spent most of each day watching television. (*Id.*). He could stand or sit for 15 minutes before needing to change positions. (Tr. 42). He could walk one block before needing to stop. (*Id.*). Due to his difficulty sleeping, he felt fatigued most days and "I take at least two naps a day." (Tr. 44). He also indicated that his "focus or concentration" was presently impaired. (*Id.*). Concluding, he noted that "since I don't have the mobility that I used to have, I used to do a lot of running. I can't do any running anymore. I used to play basketball. I can't do that anymore. I can't even go bowling because of the twisting motion. So I'm very limited on what I can do now." (*Id.*).

### ii.      The VE's Testimony at the Administrative Hearings

The VE began by classifying Plaintiff's past work as "program analyst, which is DOT code 161.167-010. The SVP level is 7, which is skilled work. It's classified as sedentary. And it was performed at the sedentary range. And we have a logistics manager, DOT code 184.117-050. The SVP level is 8, which is skilled work. It's sedentary, performed at the sedentary range. And then in the military there is a field maintenance technician, DOT code 620.131-014. SVP is 7, which is skilled work, classified as light, performed at the heavy range." (Tr. 45).

The ALJ then posed his first hypothetical, asking the VE to "assume a hypothetical individual who should never crawl, use ladders, scaffolds, or ropes, should

only occasionally use ramp, stairs, stoop, kneel, or crouch. Should avoid even moderate exposure to fumes, odors, gasses, and respiratory irritants. Should avoid concentrated exposure to hazards, including dangerous, unprotected machinery, or work at unprotected heights. Should only occasionally bend, twist, or turn at the waist. And the individual requires a cane to ambulate. In your opinion, can such an individual do Claimant's past work?" (Tr. 45-46). The VE indicated that such an individual could perform Plaintiff's past work. (Tr. 46).

The ALJ then asked the VE to assume further that such an individual could perform only "simple, unskilled work." (*Id.*). According to the VE, although such a person could not perform Plaintiff's past work, other work existed at the light exertional level in the national economy, including: "sorting and inspecting" (with 150,000 national jobs), "packaging and bagging" (with 150,000 national jobs), and "basic assembly work" (with 100,000 national jobs). (Tr. 46-47). She noted, as well, that "[t]here would be some examples at the sedentary range as well." (Tr. 47). The VE further clarified that her testimony as to the availability of such jobs with respect to Plaintiff's need for a cane "would be based on my background and experience, and not defined or described in the DOT." (*Id.*).

## F.    Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B). The regulations carve the evidence into various categories, "acceptable medical sources" and "other sources." 20 C.F.R. § 404.1513. "Acceptable medical sources" include, among others, licensed physicians and licensed or

certified psychologists. *Id.* § 404.1513(a). "Other sources" include medical sources who are not "acceptable" and almost any other individual able to provide relevant evidence. *Id.* § 404.1513(d). Only "acceptable medical sources" can establish the existence of an impairment. SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006). Both "acceptable" and non-acceptable sources provide evidence to the Commissioner, often in the form of opinions "about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." *Id.* When "acceptable medical sources" issue such opinions, the regulations deem the statements to be "medical opinions" subject to a multi-factor test that weighs their value. 20 C.F.R. § 404.1527. Excluded from the definition of "medical opinions" are various decisions reserved to the Commissioner, such as whether the claimant meets the statutory definition of disability and how to measure his or her RFC. *Id.* § 404.1527(d).

The ALJ must use a six-factor balancing test to determine the probative value of medical opinions from acceptable sources. 20 C.F.R. § 404.1527(c). The test looks at whether the source examined the claimant, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see also* 20 C.F.R. § 404.1527(c). ALJs must also apply those factors to "other source" opinions. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540-42 (6th Cir. 2007); SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).

Certain opinions of a treating physician, in contrast, receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see also Wilson*, 378 F.3d at 544. The only opinions entitled to dispositive effect deal with the nature and severity of the claimant's impairments. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2 (July 2, 1996). Therefore, the ALJ does not owe a treating opinion deference on matters reserved to the Commissioner. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2 (July 2, 1996). The ALJ "will not give any special significance to the source of an opinion" regarding whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, the individual's RFC, and the application of vocational factors. 20 C.F.R. § 404.1527(d)(3).

The regulations mandate that the ALJ provide "good reasons" for the weight assigned to the treating source's opinion in the written determination. 20 C.F.R. § 404.1527(c)(2); *see also Dakroub v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits

> must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996); *see also Rogers*, 486 F.3d at 242. For example, an ALJ may properly reject a treating source opinion if it lacks supporting

objective evidence. *Revels v. Sec'y of Health & Human Servs.*, 882 F. Supp. 637, 640-41
(E.D. Mich. 1994), *aff'd*, 51 F.3d 273 (Table), 1995 WL 138930, at *1 (6th Cir. 1995).

An ALJ must analyze the consistency of the claimant's statements with the other
record evidence, considering her testimony about pain or other symptoms with the rest of
the relevant evidence in the record and factors outlined in Social Security Ruling 16-3p,
2016 WL 1119029 (Mar. 16, 2016). This analysis and the conclusions drawn therefrom—
formerly termed a credibility determination[1]—can be disturbed only for a "compelling
reason." *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011); *Warner v.
Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

The Social Security regulations establish a two-step process for evaluating
subjective symptoms, including pain. 20 C.F.R. § 404.1529; 16-3p, 2016 WL 1119029, at
*2. The ALJ evaluates complaints of disabling pain by confirming that objective medical
evidence of the underlying condition exists. The ALJ then determines whether that
condition could reasonably be expected to produce the alleged pain or whether other

---

[1] On March 28, 2016, SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016), superseded and replaced SSR 96-7p. *See* SSR 16-3p, 2016 WL 1237954 (Mar. 24, 2016). The Social Security Administration explained in SSR 16-3p that the ruling's main purpose was to eliminate the term "credibility," and thereby "clarify that subjective symptom evaluation is not an examination of an individual's character, . . ." 2016 WL 1119029, at *1 n.1. As some in this Circuit have observed, the ruling, read in its entirety does not appear to substantively alter much of the manner by which ALJ's evaluate claimants' statements. *See id.* at *2 ("[W]e are eliminating the use of the term 'credibility from our sub-regulatory policy, as our regulations do not use this term. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character. Instead, we will more closely follow our regulatory language regarding symptom evaluation."); *see also, e.g.*, *Brothers v. Berryhill*, No. 5:16-CV-01942, 2017 WL 2912535, at *10 (N.D. Ohio June 22, 2017), *R. & R. adopted sub nom. Brothers v. Comm'r of Soc. Sec.*, No. 5:16-CV1942, 2017 WL 2908875 (N.D. Ohio July 7, 2017) ("[A]ccording to the very language of SSR 16-3p, its purpose is to 'clarify' the rules concerning subjective symptom evaluation and not to substantially *change* them.").

objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529; 16-3p, 2016 WL 1119029, at *2; *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). The ALJ ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. 16-3p, 2016 WL 1119029, at *2.

While "objective evidence of the pain itself" is not required, *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (quoting *Green v. Schweiker*, 749 F.2d 1066, 1071 (3d Cir. 1984)) (internal quotation marks omitted), a claimant's description of his or her physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," 20 C.F.R. § 404.1528(a). Nonetheless, the ALJ may not disregard the claimant's subjective complaints about the severity and persistence of the pain simply because they lack substantiating objective evidence. 16-3p, 2016 WL 1119029, at *5. Instead, the absence of objective confirming evidence forces the ALJ to consider the following factors:

(i)     Your daily activities;
(ii)    The location, duration, frequency, and intensity of . . . pain;
(iii)   Precipitating and aggravating factors;
(iv)    The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;
(v)     Treatment, other than medication, . . . received for relief of . . . pain;
(vi)    Any measures . . . used to relieve . . . pain.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994); 16-3p, 2016 WL 1119029, at *7. Furthermore, the claimant's work history and the consistency of his or her subjective statements are also relevant. 20 C.F.R. § 404.1527(c); 16-3p, 2016 WL 1119029, at *8.

The claimant must provide evidence establishing her RFC. The statute lays the groundwork for this, stating, "An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A); *see also Bowen*, 482 U.S. at 146 n.5. The RFC "is the most he [or she] can still do despite his [or her] limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(2). A hypothetical question to the VE is valid if it includes all credible limitations developed prior to Step Five. *Casey v. Sec. of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *Donald v. Comm'r of Soc. Sec.*, No. 08-14784-BC, 2009 WL 4730453, at \*7 (E.D. Mich. Dec. 9, 2009).

### G.    Analysis

Plaintiff raises five arguments in his Motion: (1) the ALJ improperly weighed the opinions of unspecified treating physicians, (Doc. 11 at ID 1596-99); (2) the ALJ trespassed against the tenets of SSR 96-7p, 1996 WL 374186 (July 2, 1996), in failing "to consider that Plaintiff's persistent efforts to obtain pain relief enhanced his credibility," (*Id.* at ID 1599-1600) (emphasis removed); (3) the ALJ categorically erred in finding that Plaintiff required use of a cane yet he could perform light work, (*Id.* at ID 1601-04); (4) substantial evidence does not endorse the ALJ's finding that Plaintiff could perform the sitting requirements of sedentary work, (*Id.* at ID 1605-07); and (5) the ALJ "violated HALLEX II-1-11-12 in failing to afford proper weight" to Plaintiff's "100 percent service connected disability rated through the Veterans Administration," (*Id.* at ID 1607-08). I address each argument in turn.

15

### 1.      Weight Accorded Treating Physicians

Citing 20 C.F.R. § 404.1527(d)(2), Plaintiff notes "[a]n ALJ must give the opinion of a treating source controlling weight if she finds the opinion 'well-supported by medically accepted clinical and laboratory diagnostic techniques' and 'not inconsistent with other substantial evidence in [the] case record.'" (Doc. 11 at ID 1597). He then suggests the ALJ should have granted more weight to the treating sources in the record. This argument is perplexing, however, for he points to no treating physician, instead gesturing in a general sense to "Plaintiff's medical providers and overall treatment received by the [VA] Hospitals and the Michigan Department of Corrections Medical Clinics . . . ." (*Id.* at ID 1597). Plaintiff cites no authority for the proposition that these medical providers qualify as treating sources, perhaps because they do not so qualify. *See*, 20 C.F.R. §404.1527(a)(1) (defining "Medical opinions" as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s)"); 20 C.F.R. § 404.1502 (defining an "Acceptable medical source" as, in relevant part, an individual and not an organization or entity); *see also, e.g.*, *Turner v. Colvin*, No. 3:12-CV-00422-MOC, 2013 WL 1181603, at *2 (W.D.N.C. Mar. 21, 2013) ("[T]he treating source rule does not include 'hospitals' as treating sources, but instead looks to real people: 'licensed physicians' and licensed or certified psychologists.'" (citations omitted)).

Nor does Plaintiff properly fashion a challenge to the ALJ's weight assignments to Dr. Shakti Kaul or Dr. Moisese Alviar, as he does not (and cannot) suggest that the ALJ failed to make clear in his discussion his thorough and reasoned consideration thereof.

(Tr. 22-23); *see, e.g.*, *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (underdeveloped arguments are waived). To the extent Plaintiff manages to outline an attack against the "significant weight" granted Dr. Shakti Kaul and the "little weight" granted Dr. Moisese Alviar, however, the attack fails. (Tr. 22-23) (discussing findings from both Dr. Kaul and Dr. Alviar in detail, and citing evidence in support of his conclusions); *e.g.*, (Tr. 451, 1322-23, 1484) (showing Plaintiff's lack of back pain during his insured period, his substantial recovery from his 2003 surgery, and the absence of significant abnormalities in his objective evidence of record); (Tr. 451, 456, 516, 521, 581, 586, 842, 904, 954, 960, 1505) (denying any notable back pain); (Tr. 392, 663) (observed playing basketball without a cane); (Tr. 396, 428, 561) (going on long walks and performing push-ups and pull-ups); *see also* (Tr. 428, 450-51, 456, 476, 491, 581, 586, 601, 751, 842, 887, 902, 907, 932, 961, 1005, 1169, 1247, 1261, 1268, 1417, 1440, 1484) (normal gait and/or absence of motor deficits); (Tr. 384, 428, 451, 456, 525, 581-82, 586, 641, 657, 887, 955, 961, 1268, 1433, 1466) (intact muscle strength).

Accordingly, Plaintiff's treating-source argument should not prevail.

## 2.    Consideration of Plaintiff's Testimony

Plaintiff next summarizes various treatments he underwent for back pain, among other symptoms, and suggests the ALJ should have weighed this favorably in determining his credibility under SSR 96-7p. (Doc. 11 at ID 1599-1600). In making this argument, he correctly quotes SSR 96-7p as providing that

> [p]ersistent attempts by the individual to obtain relief of pain or other symptoms, such as by increasing medications, trials of a variety of treatment modalities in an attempt to find one that works or that does not

17

> have side effects, referrals to specialists, or changing treatment sources may
> be a strong indication that the symptoms are a source of distress to the
> individual and generally lend support to an individual's allegations of
> intense and persistent symptoms.

(*Id.* at ID 1599) (quoting 1996 WL 374186, at *7).

As an initial matter, I note that as of March 28, 2016, SSR 16-3p, 2016 WL
1119029 (Mar. 16, 2016), superseded and replaced SSR 96-7p. *See* SSR 16-3p, 2016 WL
1237954 (Mar. 24, 2016). The Commissioner avers that Plaintiff's failure to couch his
argument in terms of SSR 16-3p's requirements essentially nullifies the force of his
argument. (Doc. 13 at ID 1625). I disagree. As the Social Security Administration
explained in SSR 16-3p, its main purpose in superseding SSR 96-7p was to eliminate the
term "credibility," and thereby "clarify that subjective symptom evaluation is not an
examination of an individual's character, . . ."  2016 WL 1119029, at *1 n.1. Indeed, SSR
16-3p still provides that "[p]ersistent attempts to obtain relief of symptoms, such as
increasing dosages and changing medications, trying a variety of treatments, referrals to
specialists, or changing treatment sources may be an indication that an individual's
symptoms are a source of distress and may show that they are intense and persistent." *Id.*
at *8. Though the phrasing is obviously not identical—*compare id.*, *with* 1996 WL
374186, at *7 ("Persistent attempts by the individual to obtain relief of pain or other
symptoms . . . may be a strong indication that the symptoms are a source of distress to the
individual *and generally lend support to an individual's allegations of intense and
persistent symptoms.*")—Plaintiff's underlying argument is not obsolete. I construe his
challenge instead as a general contention that the ALJ ought to have found Plaintiff's

18

testimony more consistent with the other record evidence in light of his persistent efforts to alleviate his symptoms.

Even so, Plaintiff's argument should fail. The ALJ considered Plaintiff's attempts to relieve his symptoms and found them less than persistent. *See* (Tr. 23) (observing that Plaintiff rarely complained about back pain during his insured period and behaved in a manner inconsistent with disabling back pain). Despite a 2003 lumbar-spine surgery, he continued to work and remained relatively active, denying back pain on most occasions. (Tr. 22-23); *e.g.*, (Tr. 451, 456, 516, 521, 581, 586, 842, 904, 954, 960, 1505) (denying any notable back pain); (Tr. 392, 663) (observed playing basketball without a cane); (Tr. 396, 428, 561) (going on long walks and performing push-ups and pull-ups). Records showed that he recovered well from his surgery, and aside from L4-L5 narrowing, objective evidence did not show serious abnormalities. (Tr. 23); *e.g.*, (Tr. 1322-23, 1484); *see also* (Tr. 428, 450-51, 456, 476, 491, 581, 586, 601, 751, 842, 887, 902, 907, 932, 961, 1005, 1169, 1247, 1261, 1268, 1417, 1440, 1484) (normal gait and/or absence of motor deficits); (Tr. 384, 428, 451, 456, 525, 581-82, 586, 641, 657, 887, 955, 961, 1268, 1433, 1466) (intact muscle strength). Although Plaintiff points to evidence in his favor, SSR 16-3p does not *command* a favorable finding because of a claimant's "persistent attempts to obtain relief of symptoms," 2016 WL 1119029, at *8, and the ALJ was entitled to resolve any conflicts in the evidence. *Accord, e.g.*, *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281-82 (6th Cir. 2009) ("[A]dministrative findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a 'zone of choice'

within which the Secretary may proceed without interference from the courts." (quoting *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted))).

As such, substantial evidence underlies the ALJ's findings as to these issues.

### 3.    Step Four and Step Five Conclusions

Plaintiff also supposes that "[a]n individual who uses a cane for ambulation cannot perform the standing, walking, and lifting entailed in the performance of light work." (Doc. 11 at ID 1602). Further, "[w]hile the use of such a device does not always impact the ability to perform sedentary work in light of the 'minimal lifting and carrying requirements of many sedentary unskilled occupations,' this is not true for light work, which entails frequent lifting of up to 20 pounds." (*Id.* at ID 1603).

Plaintiff's essentially poses a lay challenge to the ALJ's finding.  The ALJ, however, relied on testimony from the VE that a person with Plaintiff's limitations—*i.e.* someone who required a cane for ambulation—could perform Plaintiff's past work as actually and generally performed, as well as other jobs such as sorter/inspector, packager/bagger, and assembler. (Tr. 24). Courts in the Sixth Circuit have regularly upheld ALJs' reliance on similar VE testimony in analogous factual scenarios. *Accord Whayne v. Comm' rof Soc. Sec.*, No. 17-CV-10262, 2018 WL 1256237, at *4 (E.D. Mich. Mar. 12, 2018) ("SSR 96-9p, the regulation that specifically addresses hand-held assistive devices, discusses an individual's ability to perform sedentary work in conjunction with the use of a cane, and it instructs that 'it may be especially useful to consult a vocational resource in order to make a judgment regarding the individual's ability to make an adjustment to other work.' . . . The ALJ did so here." (citation omitted)); *see also, e.g.*,

20

*Scott v. Comm'r of Soc. Sec.*, No. 14-11500, 2015 WL 4634077, at *6 (E.D. Mich. July 6, 2015), *R. & R. adopted,* No. 14-CV-11500, 2015 WL 4633927 (E.D. Mich. Aug. 3, 2015); *Koehn v. Comm'r of Soc. Sec.*, No. 2:16-CV-11755, 2017 WL 3612872, at *8 (E.D. Mich. July 18, 2017), *R. & R. adopted,* No. 16-11755, 2017 WL 3602024 (E.D. Mich. Aug. 22, 2017); *Profitt v. Comm'r of Soc. Sec.*, No. 1:09-CV-518, 2010 WL 3703214, at *3 (S.D. Ohio Aug. 23, 2010), *R. & R. adopted,* No. 1:09-CV-518, 2010 WL 3703219 (S.D. Ohio Sept. 16, 2010); *cf. Marko v. Comm'r of Soc. Sec.*, No. 2:16-CV-12204, 2017 WL 3116246, at *5 (E.D. Mich. July 21, 2017) (collecting cases). In the instant case, the ALJ was entitled to rely on the VE's testimony. *See Beinlich v. Comm'r of Soc. Sec.*, 345 F. App'x 163, 168 (6th Cir. 2009) ("The ALJ may choose to rely on the VE's testimony in complex cases, given the VE's ability to tailor her findings to an 'individual's particular residual functional capacity.'" (quoting *Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir. 2003))).

Perhaps more importantly, the most Plaintiff can hope to accomplish with this line of argumentation is expose harmless error. Even were I to credit his argument that a cane *per se* precludes light work, this finding would have no impact on the viability of the ALJ's finding that Plaintiff could perform his past relevant *sedentary* work at Step Four of his analysis, and Plaintiff does not also argue that a cane precludes his past sedentary work. As such, Plaintiff's argument proves unavailing.

### 4. Finding as to Capacity To Sit

Plaintiff next suggests that the ALJ's RFC overestimates his ability to sit, and that the record evidence actually demonstrates that Plaintiff cannot perform the sitting requirements involved in sedentary work. (Doc. 11 at ID 1605-07).

Again, Plaintiff's argument neglects to adequately address the standard of review. On review, this Court seeks to determine if substantial evidence supports the ALJ's decision; where the ALJ's decision falls within her "'zone of choice'" and "is supported by substantial evidence, a reviewing court must affirm." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted). The ALJ considered and discussed the evidence Plaintiff alludes to[2] in his argument. *See generally* (Tr. 18-24). Yet, substantial evidence supports his finding that Plaintiff could tolerate the sitting requirements for sedentary work. (Tr. 22-23); *e.g.*, (Tr. 451, 1322-23, 1484) (showing Plaintiff's lack of back pain during his insured period, his substantial recovery from his 2003 surgery, and the absence of significant abnormalities in his objective evidence of record); (Tr. 451, 456, 516, 521, 581, 586, 842, 904, 954, 960, 1505) (denying any notable back pain); (Tr. 392, 663) (observed playing basketball without a cane); (Tr. 396, 428, 561) (going on long walks

---

[2] I use the term "alludes to" because Plaintiff does not actually cite to the great majority of this evidence in making his argument, aside from a record documenting bilateral foot pain in December 2015, after the conclusion of Plaintiff's date last insured. *See generally* (Doc. 11 at ID 1605-07). The ALJ, on the other hand, considered and discussed these matters at some length in his opinion, granting significant weight to Dr. Shakti Kaula's opinion and little weight to Dr. Moisese Alviar's opinion. (Tr. 18-24). As I note in the first section of this analysis, his challenges to these weight assignments are waived, and in any case, controverted by the record evidence. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (underdeveloped arguments are waived). Likewise, his challenges to the ALJ's consideration of his ability to handle and finger, mental capacity, sleep apnea, hypertension, and asthma are chronically underdeveloped and therefore waived. *See id.* In addition, I have reviewed the entirety of the medical evidence and found substantial evidence to support the ALJ's decision on these matters.

and performing push-ups and pull-ups); *see also* (Tr. 428, 450-51, 456, 476, 491, 581, 586, 601, 751, 842, 887, 902, 907, 932, 961, 1005, 1169, 1247, 1261, 1268, 1417, 1440, 1484) (normal gait and/or absence of motor deficits); (Tr. 384, 428, 451, 456, 525, 581-82, 586, 641, 657, 887, 955, 961, 1268, 1433, 1466) (intact muscle strength). Plaintiff's argument essentially accuses the ALJ of cherry-picking evidence, but as these record excerpts demonstrate, "the same process can be described more neutrally as weighing the evidence." *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009).

For these reasons, the Court should find Plaintiff's complaint on this ground unpersuasive.

### 5.     Consideration of Plaintiff's VA Disability Benefits Award

In his final argument, Plaintiff cites HALLEX II-1-11-12, which "contains the Circuit Court Case Reporter for the Eleventh Circuit, and provides guidance on 'Medical Evidence—Determinations by other agencies.'" (Doc. 11 at ID 1607). He then points to *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983), for the proposition that "'findings of disability by another agency, although not binding on the Secretary, are entitled to great weight.'" (Doc. 11 at ID 1607) (quoting *Bloodsworth*, 703 F.2d at 1241). In his view, the ALJ did not accord Plaintiff's prior VA benefits determination sufficient weight. (*Id.*) "Nowhere in the decision does the ALJ describe why the VA decision was not persuasive." (*Id.* at ID 1608).

Contrary to Plaintiff's lamentations, the ALJ expressly discussed the VA decision at issue, alongside his voluminous medical records from VA hospitals. *See generally* (Tr. 18-19, 21-24). Specifically addressing the VA decision, he granted it "[l]imited weight"

23

because "the VA standards for disability differ significantly from those of the Social Security Administration," and there were "no records of treatment for many of the listed issues [*e.g.*, neurosis, keratoconus, and tinnitus] during the period at issue." (Tr. 24). Plaintiff cites precedent from the Eleventh Circuit, but this Court sits in the Sixth Circuit, which requires "consideration" of VA determinations but has "not specified the weight such a determination should carry when determining social security disability eligibility." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 510 (6th Cir. 2013); *cf. Joseph v. Berryhill*, No. 3:16CV02259, 2017 WL 3736787, at *6 (N.D. Ohio Aug. 30, 2017) ("In those cases where district courts held remand was proper because of error relating to consideration [of] a VA disability determination, the ALJ either did not consider the VA decision at all or did not designate the amount of weight afforded to the decision."). The ALJ fulfilled such duty by expressly discussing the VA's decision, the weight given it, and the rationale behind his finding.

Put simply, the ALJ sufficiently considered the VA determination of record, and thus his decision remains supported by substantial evidence.

### H.    Conclusion

For the reasons stated above, the Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment, (Doc. 11), be **DENIED**, that the Commissioner's Motion, (Doc. 13), be **GRANTED**, and that this case be **AFFIRMED**.

### III.  <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  May 1, 2018                          S/ PATRICIA T. MORRIS
                                            Patricia T. Morris
                                            United States Magistrate Judge


## CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: May 1, 2018                          By s/Kristen Castaneda
                                            Case Manager